IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MELISSA LEE SPEIGHT,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　Civ. No. 16-1143
　　　　　　　　　　　　　　　　　　　　　　　　　　JCH/GBW

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Plaintiff's Motion to Remand the Social Security Agency ("SSA") decision to deny Plaintiff Social Security Disability Insurance benefits ("SSDI"). *Doc. 21.* For the reasons discussed below, I recommend GRANTING Plaintiff's Motion, and REMANDING this action to the Commissioner for further proceedings consistent with this opinion.

### I.    PROCEDURAL HISTORY

Plaintiff filed an initial application for SSDI on March 4, 2013. AR at 144-45. Plaintiff alleged that she had a disability resulting from heart attacks, artery disease, diabetes, and spine, leg and foot injuries. AR at 170. Her application was denied on initial review on August 16, 2013 and again on reconsideration on November 26, 2013. AR at 57-77. On December 19, 2013, Plaintiff requested a hearing on the determination

1

by an Administrative Law Judge ("ALJ"), and the hearing before the ALJ took place on March 27, 2015. AR at 23-56, 91. On May 18, 2015, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. AR at 8- 18.

Plaintiff appealed the denial of her application to the Appeals Council, which denied review on September 8, 2016. AR at 1-3. Plaintiff filed suit in this Court on October 17, 2016, seeking review of the ALJ's decision. *Doc. 1*.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotations omitted).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800. "The record must demonstrate that the ALJ considered all of the evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent

2

conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

**III.  PARTIES' POSITIONS**

Plaintiff asserts that the ALJ committed reversible error by failing to (1) properly assess the opinions of Ruben Franco, P.A, Dr. Jordan, and non-examining doctors, (2) include a sit/stand option in Plaintiff's RFC, (3) engage in a proper credibility analysis, and (4) make a complete and correct past work finding.  *Doc. 21* at 13-25, *doc. 24*.  Defendant responds that the ALJ's decision should be affirmed because the ALJ (1) reasonably considered the medical opinions and Plaintiff's subjective complaints when developing Plaintiff's RFC, and (2) properly found Plaintiff could perform her past relevant work as a payroll clerk.  *Doc. 23* at 9-17.  Ultimately, I recommend that the Court remand this action, finding that the ALJ committed reversible error during his credibility assessment.  I do not reach the other issues.

**IV.  ALJ EVALUATION**

**A. Legal Standard**

For purposes of Social Security Disability Insurance benefits, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  To

3

determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520. If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity;" (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's RFC in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62 (1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, the ALJ then proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

**B. The ALJ's Decision**

On May 18, 2015, the ALJ issued a decision denying Plaintiff's application for benefits. AR at 11-18. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 12, 2013, the alleged disability onset date. AR at 13. At step two, the ALJ determined that Plaintiff had the following severe impairments: ischemic heart disease, CAD status post stenting, diffuse lumbar disc degeneration, scoliosis, mild stenosis and nerve impingement at L-4-5 and L3-4, and degenerative changes to right glenohumeral and acromioclavicular joints. AR at 13. At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" of one of the listed impairments. AR at 14.

At step four, the ALJ determined that through the date last insured, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(c), with certain limitations, including that Plaintiff:

> can lift, carry, push or pull no more than 20 pounds at a time and
> frequently lift, carry, push or pull objects weighing up to 10 pounds. . . .
> [Plaintiff] can . . . stand or walk off-and-on for a total of about six hours
> during an eight-hour workday. [Plaintiff] can sit for approximately six
> hours total during an eight-hour workday. [Plaintiff] may stoop
> occasionally[, and] occasionally climb ramps and stairs, but never ladders,
> ropes or scaffolds. She may occasionally balance, stoop, crouch, and kneel
> but never crawl. She must avoid more than occasional exposure to
> moving machinery and unprotected heights, extreme cold or heat, and
> fumes, odors, dust and gases.

AR at 14-15. As the next part of step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a payroll clerk. AR at 17. Accordingly, the ALJ determined that Plaintiff was not disabled and did not proceed to step five. AR at 17; *see also* 20 C.F.R. § 404.1520(a)(4) (if the agency can determine disability or non-disability at any step in the five-step evaluation process, the disability determination is made and the evaluation does not proceed to the next step).

**V.   ANALYSIS**

    **A. <u>The ALJ Committed Reversible Error in His Credibility Assessment</u>**

Plaintiff argues that the ALJ erred in his assessment of Plaintiff's credibility. *Doc. 21* at 21-23, *doc. 24* at 5. Credibility determinations are within the province of the ALJ, and the Court should generally defer to the ALJ's credibility determinations. *Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir. 1988); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993). However, deference is not an absolute rule. *Thompson*, 987 F. 2d at 1490. Rather, the ALJ's opinion must contain "specific reasons" for his credibility findings that are "closely and affirmatively linked" to evidence in the record and "not

just a conclusion in the guise of findings." *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004). Further, deference to a credibility finding is not required where "specific facts behind the generalities paint a very different picture" than the one crafted by the ALJ in his credibility analysis. *Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 2011); *see also Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) (rejecting an ALJ's credibility analysis as unsupported by substantial evidence where the claimant's reported daily activities were not inconsistent with his claim of disabling pain). For the following reasons, I recommend that the Court find that the ALJ's credibility analysis improperly mischaracterizes the evidence and is not supported by substantial evidence. Such errors warrant remand.

When conducting a credibility analysis, in order to evaluate the severity of subjectively reported symptoms when determining a Plaintiff's RFC, the ALJ engages in a two-part process. *Policy Interpretation Ruling Titles II And XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).[1] First, he determines whether "there are medical signs and laboratory findings demonstrating the existence of a medically determinable . . . impairment[] that could reasonably be expected to produce the pain or other symptoms

---

[1] SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), effective March 28, 2016. However, this citation properly refers to the governing Social Security Ruling in effect at the time of the ALJ's decision. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 n.5 (10th Cir. 2012). Moreover, applying the superseding ruling would not affect the present analysis, as it still requires a similar two-step process including, at step two, consideration of the factors set forth in 20 C.F.R. § 404.1529(c)(3) in assessing the intensity, persistence, and limiting effects of a claimant's symptoms. *See* SSR 16-3P, at *4-*7.

7

[alleged by the claimant.]" *Id.* at *6. The ALJ must consider all of the medically determinable impairments in conjunction, and not simply those determined to be severe at step two. *See* 20 C.F.R. § 404.1545(a)(2). Once the ALJ has assessed the existence of a medically determinable impairment, he then evaluates the claimant's credibility concerning "the intensity, persistence, and functionally limiting effects of the symptoms . . . ." SSR 96-7p at *2. When assessing the severity of impairments, the ALJ considers:

(1) The claimant's daily activities;
(2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
(3) Factors that precipitate or aggravate the symptoms;
(4) The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate symptoms;
(5) Treatment, other than medication, the claimant receives or has received for his symptoms;
(6) Any measures other than treatment the claimant uses or has used to alleviate his symptoms;
(7) Any other factors concerning the individual's functional limitations and restrictions due to his symptoms.

20 C.F.R. § 404.1529(c)(3); *see also* SSR 96-7p, at *3. When assessing the credibility of a claimant's pain testimony in particular, the ALJ should consider the following factors:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.
> *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)).

8

Here, Plaintiff objects to the ALJ's credibility analysis, arguing that he mischaracterizes the evidence in order to justify an adverse credibility finding. Specifically, the ALJ's credibility analysis states:

> [Plaintiff] alleges that her impairments affect her ability to lift, stand, walk, sit, climb stairs, kneel, squat, use hands, bend, concentrate, and complete tasks. Despite these allegations, the evidence indicates she maintains the ability to perform numerous tasks including attending to her personal care needs, preparing meals, performing household duties, watching TV, writing, reading, driving a car, going outside, shopping in stores, paying bills, and spending time with others. [Additionally,] [t]he claimant's pain allegations are not credible in light of the medical evidence.

AR at 15, 17.

As to the portion of the credibility analysis relating to Plaintiff's daily activities, the Tenth Circuit has been skeptical of relying on such minimal activities as those cited above, like "watching TV" and "going outside," to support an adverse credibility finding. *See Berryhill v. Barnhart*, 64 F. App'x 196 (10th Cir. 2003) (unpublished); *see also Thompson*, 987 F.2d at 1480 (explaining that "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity") (quotations, alteration, and citation omitted). In *Berryhill*, the ALJ relied upon the Plaintiff's alleged ability to watch television, listen to music, visit relatives, take care of her three teenage sons and her dogs, wash dishes and clothes, cook, grocery shop and drive to reject her assertions that she was unable to work. 64 F. App'x at 200. The court found this credibility analysis erroneous, explaining that such "minimal [household] activities . . . [were] insufficient to establish that she can work on a

9

consistent basis" and that, moreover, "the record does not contain substantial evidence supporting the ALJ's finding that [the claimant] can even perform these minimal activities." *Id.*

Similarly, in *Frey*, the Tenth Circuit rejected the ALJ's reliance on the claimant's daily activities of "a few household tasks, [working] on his cars, and [driving] on occasional recreational trips" as "substantial evidence refuting [the claimant's] complaint of disabling pain or its credibility," explaining that sporadic performance of such tasks is not inconsistent with "a claim of disabling pain." *See also Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) (claimant's activities of "working in his yard, performing a few household tasks, working on cars, taking an occasional trip with his brother in a camper, and on one occasion, driving to California" do not establish, without more evidence, the ability to engage in substantial gainful activity); *Thompson*, 987 F.2d at 1489-90 ("minimal daily activities" of "visiting neighbors and doing light housework" insufficient to amount to substantial evidence supporting the ALJ's adverse credibility finding).

Here, the ALJ does not even refer to such arduous activities as caring for three teenage sons, yard work, or working on cars in support of rejecting Plaintiff's pain allegations. In other words, Plaintiff's daily activities are no more strenuous than the activities found to be "minimal" in other cases, which are, by themselves, "insufficient to establish that she can work on a consistent basis." *See Berryhill*, 64 F. App'x at 200.

10

As a result, the Court must consider whether substantial evidence otherwise supports the ALJ's determination that Plaintiff's subjective complaints of disabling pain are not credible. For the reasons that follow, I recommend the Court answer that question in the negative.

Upon close review of the record, it becomes apparent that the "specific facts behind the generalities" that the ALJ uses to justify his adverse credibility finding paint a very different picture than the one painted by the ALJ. *See Krauser*, 638 F.3d at 1332. For example, the ALJ asserts that Plaintiff can perform "numerous" activities, and cites to examples such as attending to her personal care needs, performing household duties, watching TV, driving a car, and spending time with others, as discussed above. AR at 15. The ALJ relied solely on hearing testimony and Exhibit 5E for record evidence supporting this description of Plaintiff's daily activities. *Id*.

However, the record as a whole indicates that Plaintiff is far less functional than the ALJ's assertion would lead subsequent reviewers to believe. Plaintiff testified—and the medical records show—that following Plaintiff's multiple heart attacks, she has been perpetually exhausted, and must spend the majority of the day resting. AR at 37, 187, 577-78, 856-57, 918, 920. In fact, she naps approximately four hours during the day. AR at 45. Exhibit 5E, on which the ALJ relied in summarizing Plaintiff's daily activities, does indicate that Plaintiff "tr[ies] to do a few household chores, like cleaning the kitchen or dusting" whenever she "ha[s] the energy." But the ALJ ignores Plaintiff's

11

qualification immediately thereafter: "But whatever I do, it takes all day, because I have to rest in between. If I sweep or mop it will take a couple days to recover." AR at 187. Similarly, beneath the "House and Yard Work" header, Plaintiff repeats that while she sometimes cleans, does laundry, or works outside, it takes "all day" to complete any of these tasks and sometimes takes "a couple of days to recover if I do too much." AR at 189. She explains that "mopping or sweeping kills me, so my daughters usually do that for me, as well as the yard work." *Id.*

Plaintiff's hearing testimony likewise indicates that she suffers from severe shortness of breath, and reports lightheadedness and inability to breathe after so much as one minute of vacuuming. AR at 38. Tasks that "used to take [her] a couple of hours take [her] a couple of days now." AR at 37. Her legs become "draggy" when she walks, and her 30- year-old daughter lives with her to care for her and to manage household responsibilities. AR at 46-47. While she retains the ability to prepare meals for herself, she no longer has the energy to make meals for her family as she used to do, and she can no longer lift her cast iron cooking utensils or even a casserole dish without assistance. AR at 189, 39.

Plaintiff's hearing testimony also shows that prior to leaving her last employment, Plaintiff had to go home two to three times a day to sleep, because her body would shut down. AR at 29, 35. As she pushed herself to continue working, her condition worsened. AR at 35. She reported, she "couldn't even think straight," and

12

was making mistakes in her job until her employers made it clear that she was not pulling her weight. AR at 35-36. In support, Dr. Jordan determined that Plaintiff could only function about 3/5 of the time. AR at 540.

Likewise, the evidence on which the ALJ relied to establish that Plaintiff maintains the ability to drive a car, go outside, and spend time with others paints a different picture than the ALJ's analysis indicates. Plaintiff rarely leaves the house, and when she does, she is normally accompanied by her sister. AR at 47. She only goes outside a few times per week. AR at 190. She drives "[o]ccasionally . . . but only if [she feels she is] okay to do so." AR at 47-48. As for spending time with others, Plaintiff indicated that such social interaction occurs "mostly on the phone, or they come [] to my home and we visit[,]" and such interactions occur "once in a while, not as often anymore." AR at 191.

More importantly, the ALJ mischaracterizes the medical evidence related to Plaintiff's pain in finding that the evidence is inconsistent with her subjective complaints. Plaintiff's pain is so significant that she has been prescribed oxycodone. AR at 989. Plaintiff is also prescribed Metformin, Lipitor & Lantus (to manage diabetes), Toprol (to treat chest pain and prevent another heart attack), Lisinopril (to treat hypertension and congestive heart failure), Plavix (to prevent blood clots), and Synthroid (to treat hypothyroidism). AR at 178. Such a medical approach is hardly the

"conservative treatment" that the ALJ alleges conflicts with the Plaintiff's subjective complaints of pain. AR at 17.

The ALJ also asserts that "physical examinations throughout the period of disability were relatively within normal limits" and states that the record shows Plaintiff "had a normal gait, used no assistive device, had good straight leg raise testing, fairly good range of motion without any great difficulty, and she had good reflexes and sensation." AR at 16. In support, he cites generally to hundreds of pages of medical records from Plaintiff's treatment at Kirtland Air Force Base, AMCE Physicians Group, Upright MRI, 377th Medical, UNMH, ABQ Health Partners, and Presbyterian. *See id.* (citing to AR 253-541, 553-975, 981-1074). Only a portion of these records document treatment from the relevant time period between Plaintiff's alleged onset date of February 12, 2013 and her date last insured of March 31, 2017. AR at 537-41, 788-917, 942-75, 981-1074.[2] Of those, many pertain to medical treatment unrelated to her impairments, including treatment for an abscessed tooth, an ovarian mass, and hearing and dizziness issues related to vertigo. AR at 814-31, 942-75.

Records from a January 2015 hospital admission reflect that Plaintiff fell in her kitchen after her right leg "gave out," causing a head injury and pain to her right

---

[2] The Exhibit Description in the AR indicates that Exhibit 7F contains records dating between March 7, 2012 and December 10, 2013, but a review of the record reveals that the majority of the records in Exhibit 7F actually date from 2011. *See* AR at 553-803. The only record in that exhibit from the pertinent time period indicates that Plaintiff arrived at the emergency room on December 10, 2013 presenting with chest pain, and an X-ray of the chest showed no detrimental change since her last visit in March 2012. AR at 795-96.

14

shoulder and arm. AR at 832-55, 1045-68 (duplicative). She was unable to move from the floor for thirty minutes. *Id*. Although the points of impact were her head and left wrist, impressions of the X-rays taken during that admission indicate chronic degenerative changes to Plaintiff's right shoulder joints, which the ALJ included among the severe impairments at step two. AR at 834, 838, 843-46. Physical examination revealed tenderness in the left hand and right shoulder and elbow, although she maintained a "normal range of motion" in all but the right shoulder. AR at 837. Other treatment notes from the visit showed that Plaintiff was positive for back pain and arthralgias (joint pain) in her wrists, elbow, and shoulder. AR at 836. While technically consistent with the ALJ's somewhat vague summary of the record as showing that Plaintiff had a "fairly good range of motion without any great difficulty" throughout the period of disability, these records are not inconsistent with Plaintiff's allegations of disabling pain. AR at 16.

Moreover, of those records from the relevant time period, a significant number document Ruben Franco, P.A.'s treatment of Plaintiff. AR at 981-1037. Mr. Franco conducted at least nine physical exams of Plaintiff over the span of several years, including the straight-leg raise tests for neuropathy referenced by the ALJ among the medical evidence of record that he found to be inconsistent with Plaintiff's allegations of disabling pain. *See* AR at 16, AR at 988-1032. Contrary to the ALJ's characterization of those records, Mr. Franco consistently found that Plaintiff suffered from "painful"

15

extension, lateral flexion, and rotation of the cervical and lumbar spine to the right and left, hypomobility," pain produced upon "palpation, " "swelling [and] deformity" of the left ankle and foot, audible "crepitus with motion," painful dorsal flexion, plantar flexion, inversion, joint swelling and muscle weakness. AR 988-1032. Over time, Mr. Franco notes that Plaintiff's condition has worsened due to activities such as "steps of ambulation," and "weightbearing (sic)" AR at 1015, 1019. He further observes that she suffers from dizziness, for which she consults a neurologist. AR at 1019.

Mr. Franco prepared an opinion in connection with Plaintiff's application for benefits, which the ALJ discounted as "not consistent with the overall medical evidence of record." AR at 16. In his opinion, Mr. Franco concluded that Plaintiff can stand and/or walk for less than two hours in an eight-hour workday, which would support a limitation to sedentary work. AR at 976-77. In contrast, the ALJ assigned Plaintiff an RFC limiting her to light work, and stating that she "can stand or walk off-and-on for a total of about *six hours* during an eight-hour workday." AR at 14 (emphasis added). The ALJ provides no explanation as to why he rejects Mr. Franco's stand and/or walk limitation for Plaintiff, other than to say that it conflicts with medical evidence overall. AR at 16. Indeed, it appears that the ALJ concluded that Mr. Franco's own treatment records conflict with Mr. Franco's opinion that Plaintiff should be limited to sedentary work, as the ALJ's judgment that Plaintiff "had good straight leg raise testing, fairly

good range of motion without any great difficult, and . . . good reflexes and sensation" is supported by a citation to Mr. Franco's treatment records. AR at 16.

The remaining records from the relevant time period that have not already been discussed do not provide the substantial evidence so far found lacking. *See* AR at 856-917, 942-75, 1043-44. Various treatment providers discuss her fatigue, severe chest pain, chronic back pain, joint pain, right leg pain, and left lower extremity neuropathy and antalgic gait, and records reflect that Plaintiff consistently reports pain between 7 and 10 out of 10 during the relevant time period. AR at 856-57, 860, 863, 870, 876, 884, 891, 894-96, 898-901, 905-06, 909-14, 918, 949-52, 1044. Therefore, the ALJ's credibility determination underlying his rejection of Plaintiff's subjective allegations of disabling pain is not supported by substantial evidence.

Finally, despite the ALJ's conclusion that the medical evidence shows that Plaintiff had a normal gait, good straight-leg raise testing, fairly good range of motion, and good reflexes and sensation, the ALJ cites to no evidence supporting his decision to discount Plaintiff's subjective complaints regarding the lifting limitations caused by her arm weakness and pain. Specifically, the ALJ cites to no evidence suggesting that Plaintiff has the ability, as reflected in her RFC, to "lift, carry, push or pull" up to 20 pounds at a time and to "frequently lift, carry, push or pull objects weighing up to 10 pounds," contrary to Plaintiff's self-reported inability to lift cast iron pans weighing no more than three pounds. AR at 14, 42-43. Indeed, the very first exhibit cited by the ALJ

17

in his credibility analysis confirms that Plaintiff suffered a severe lesion of her right ulnar nerve and moderately severe carpal tunnel syndrome in her right arm beginning in 2003, both of which are classified as "chronic" problems.[3] AR at 257-58.

In short, Plaintiff's self-reported lifting limitations are uncontroverted by the 800 pages of medical evidence cited by the ALJ in his credibility analysis. Therefore, the ALJ was required to discuss the testimonial evidence pertaining to those lifting limitations that he chose not to rely upon in crafting Plaintiff's RFC. *See Chater*, 79 F.3d at 1010. Accordingly, even if the Court were to find that substantial evidence supports the ALJ's rationale for *generally* discounting Plaintiff's subjective complaints of disabling pain, remand would nevertheless be appropriate because the ALJ erred in failing to discuss this *specific*—and uncontroverted—evidence on which he chose not to rely in determining Plaintiff's lifting limitations.

Overall, the objective evidence does not match the picture that the ALJ paints. Rather, he mischaracterizes the evidence in order to support his adverse credibility finding and his determination of Plaintiff's RFC. A review of the records shows that substantial evidence does not support his determination that Plaintiff's subjective allegations of disabling pain are not credible. As such, the Court should find that the ALJ committed reversible error.

---

[3] Plaintiff did undergo nerve surgery on her right arm in 2005. *See* AR at 871. I do not cite to these records to suggest that the limitations identified therein should be incorporated into Plaintiff's RFC. As these records date from ten years earlier than the relevant time period, they are not pertinent to the disability analysis in any event. Rather, they are mentioned to illustrate the shortcomings in the ALJ's analysis, including the records to which he cited in support.

## VI. CONCLUSION

Because Plaintiff has demonstrated that the ALJ erred in his credibility analysis, Plaintiff's Motion to Remand to Agency for Rehearing (*doc. 21*) should be GRANTED, and this case is REMANDED to the Commissioner for further proceedings consistent with the opinion.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**